Our final case of the day is Khowaja v. Sessions. Mr. Keller. Good morning, Your Honors. Christopher Keller on behalf of the appellant. Context is critical, and the context of Mr. Khowaja's employment creates issues of fact precluding summary judgment. What is that context? Khowaja is the sole Muslim agent in the FBI's Milwaukee office. Islamic phrases are bandied about, Middle Eastern accents are mocked, ethnic stereotypes are engaged. In the coup d'etat, Agent Jones, in an unguarded moment, describes Khowaja as, quote, not our typical agent. This confluence establishes that this case cannot survive summary judgment. Now this court, as this court well knows, the legal question is whether the evidence could permit a reasonable juror to conclude that Khowaja's termination was caused by his religion. Not whether a reasonable juror would necessarily find as much. Thus, whether Khowaja could prevail at trial is another question entirely. But he has presented enough to get there. While Khowaja's employment record is not pristine, the missteps that he has created or committed were those of a rookie agent, zealous in his job. Someone trying to prove his mettle. And given the subject matter, terrorism and serious crimes, that's not a bad thing. Now, the district court essentially disregarded the context of this case. And it disregarded the divergent treatment between probationary agent Adam Herndon and Mr. Khowaja. Now, the mistakes, many of the mistakes that Mr. Khowaja made were also committed by Adam Herndon. For example, Herndon twice failed to give Miranda warnings. Herndon also failed to apprise the West Bend police chief of their high school visit. Herndon also took an intelligence analyst out into the field. Yet Herndon suffered no adverse consequences. In contrast, Khowaja lost his job. This is the epitome of inconsistent treatment. The defendant was overly stringent in its review and treatment of Khowaja in comparison to Herndon. And given the backdrop, the context, a reasonable juror could infer that this stringency was steeped in anti-Muslim motivations. Is it your problem that the magistrate judge didn't engage and look into the comparator issue? That's part of it, Judge Mannion. With due respect to the magistrate judge, her analysis is very short, very brief, and it doesn't give a full flavor of what this case is about. Frankly, I don't think you can reconcile the record with the judge's analysis. And what I mean by that is, as Your Honor points out, there's no comparison between Herndon and Khowaja. She briefly mentions Herndon in the background section of the opinion, but in the analysis, there's absolutely no comparison. There's also a complete disregard of the context of Mr. Khowaja's complaints of accents being mocked, religious phrases being used in a comical manner. And finally, there's absolutely no mention at all in the opinion of Agent Jones's not-artifical agent remark. So again, with due respect to the magistrate judge, these omissions are fatal to its analysis and warrant reversal under this court's de novo review. What's the name of the one that speaks Arabic? Agent Green. That would be Agent Green. How was he involved, or was he? He was heavily involved in this, Your Honor. In essence, we assert that he spearheaded this termination. He was Mr. Khowaja's direct supervisor. He additionally, in turn, Mr. Green had two supervisors above him, and that was Mr. Jones and Ms. Carlson. But Mr. Green, again, spearheaded this termination, and he was the individual who routinely spouted Islamic phrases and made ethnic jokes in the office. And that was in the record. So again, and that's our concern, is that the decision-maker here exhibited anti-Muslim bias. And he supervised Herndon as well? That's correct, Your Honor. And so he was the decision-maker, or at least, I don't know, whatever one of those people they call the sandwich in between, not the final decision-maker, but the guy that has a lot of influence over recommendation or not? Yes, Judge Manion, and I would assert he filled both of those roles. Not only was he in the middle, but he also had enough influence because, in essence, Agent Jones and Human Resources Director Tergel essentially just signed off on the termination. So what would you expect to go on if we chose to remand this further, something further? A trial, Your Honor, a trial. And again, a jury could very well find that Agent Green did not act with bias, that Mr. Khawaja is not credible. But again, those are credibility determinations that a jury should make, not a judge. And it gets back down to the comparator, at least that's my question. Certainly. Would that be something that if we were to remand it for the, I guess it's the same judge, magistrate judge, expound on the fact that why he is or is not a comparator? Well, firstly, we would ask for a full remand for trial. But if the court, you know, in its opinion, instructed the judge to consider that, obviously, we would be— Well, I think that's what you show is missing. I don't know. Maybe there's something more. No, yeah. We assert that that is missing from the court's opinion. And if the judge considered that on remand, then obviously, you know, we would make the argument again that Mr. Herndon was a comparator because he began one month, just one month after Khawaja started, he had the same supervisor, Mr. Green. And most importantly, and what I think makes this case somewhat unique, although I know most attorneys claim that, is the fact that the comparator made many of the missteps, many of the mistakes that the plaintiff made. And what's troubling here is that the comparator, Mr. Herndon, obviously a non-Muslim, not only was never punished or, excuse me, not terminated, but he was never even written up. So there's a blatant, inconsistent, and uneven treatment between these two individuals. And there's case law that we've cited in our briefs, Coleman is one example, that that's enough to preclude summary judgment. Counsel, you're close to the end. Yes, I am, Your Honor. If there's no further questions, I'll save the balance of my time. Thank you, Your Honor. Thank you, Counsel. Mr. Guadagnino. May it please the Court, Counsel. My name is Charles Guadagnino, Assistant United States Attorney in the Eastern District of Wisconsin. Obviously, the Court is aware that its standard of review here is de novo, and as such, I addressed all the issues that Counsel raised in his brief. I'll reply to some of what he put in his reply today. But Judge Joseph's decision was squarely based on one of the most important things in a summary judgment motion, and that's Rule 56, uncontested material facts. And while this record is somewhat long, I know the Court's seen much longer, probably with every case it's heard this morning, but if you look at Document 41 in the record, which is the plaintiff's responses to the government's proposed findings of fact, you will see significant admissions, admissions, admissions. And it's exactly what Judge Joseph focused on in her decision in finding that he did not meet a significant element of his standard of proof, and that's that he met the employer's legitimate expectations. He admits that he didn't go, didn't mirandarize that prisoner. Counsel didn't mention that he argued with Supervisory Special Agent Green about the quarrel with his own boss as a rookie, that he didn't have to give the mirandarize. It's not a wise thing to do as a rookie to argue with your boss over the propriety of whether or not you should give a prisoner mirandarize. Herndon was part of that interview. That's admitted as well. But he didn't have previous law enforcement experience, as the plaintiff had, who worked for ICE, Department of Homeland Security, and he didn't argue with his boss. Granted, he did it later. The facts of when it happened the second time are amorphous. There's very little in the record about the fact that it happened a second time or how that impacted any of his work after that. Plaintiff admits to the West Bend High School incident. There's no dispute that he did that, that he didn't give the police chief notice. There's no dispute that the police chief was not pleased with that, that he tried to reach the special agent in charge of the FBI in Milwaukee to complain about this. Undisputed, he was the lead agent. Counsel didn't mention that either. That's significant. They were both probationary officers, but he was the lead on that so-called guardian investigation. It's interesting. I just discovered that the FBI takes into account the sensitivity of the local police departments. They apparently do. Now. A recent innovation, I would suspect. I understand what you're saying, Your Honor. Beyond that, the acting director of human resources, James Tergel, who was the decision maker. There's no, we're going to mislead this court. Obviously, Special Agent Green was, as the plaintiff's immediate supervisor, was a significant party in that. He had to format the paperwork. He worked with this man day to day. He's in a position to ascertain or determine what he thinks was wrong with his performance. But it was Tergel who made the decision under the FBI rules and regulations that apply to these terminations. Putting those aside, those, and Tergel mentioned that the West Bend incident was especially significant to him for the reasons Your Honor just mentioned, keeping good relationships with other law enforcement entities. That's where Judge Joseph stopped, because that shows he didn't fulfill, he didn't meet his employer's legitimate expectations. The suitability standards are obviously legitimate standards. They're not pretext. So that's why there was no subsequent analysis in the judge's decision on similarly situated employee Herndon. It's interesting. There was another comparator, at least at the district court level, Michael Buono, who was also a probationary officer, who apparently on appeal no one is claiming that he was treated differently. As far as Herndon is concerned, the reply for counsel, for the plaintiff, mentioned with respect to the omission of the Miranda warning, it goes on about what the plaintiff's duties were as an ICE agent. I think it says something like ICE enforces the Immigration and Naturalization Act, has no arrest powers over American citizens in that capacity. The plaintiff interviewed subjects for immigration purposes without Miranda warnings, a point he tried to explain to Green. Significantly, that is followed by absolutely no citation to the record. The record appears to be limited to the fact that the plaintiff previously worked as an ICE agent. I think it was from 2008 to 2012. I may have my dates wrong, but it was more than a year. There's just nothing in the record about what his duties were or how that impacts on Green's decision to be upset with him for not giving Miranda warnings. He was a law enforcement agent. Herndon wasn't. Herndon didn't argue or quarrel with his boss. He moved on whether he agreed or not. The plaintiff didn't. So if the court chooses to get to the similar situated prong of this, I think the evidence still makes clear that he didn't meet that element of proof either, that Herndon was a similarly situated employee who was treated differently because of his not being Islamic. And I think the evidence also shows there's no pretext. Unless there's anything else, I'll conclude my comments. Thank you, counsel. Anything further, Mr. Kelleher? Yes, Your Honor. Firstly, counsel noticeably omits any reference to Agent Jones's not our typical agent remark. And again, unfortunately, the district court treated it similarly, just basically ignored it. That statement is important, again, because that was made by an ultimate decision maker, firstly. Secondly, it was made right on the cusp of termination. Chief Mueller said this statement was made in June of 2013, and Mr. Kwaja was terminated on June 17th. Or excuse me, the letter for his termination was submitted June 17th. So it was contemporaneous. As to Mr. Kwaja's missteps, certainly we admit that, again, as a rookie agent, he did make some missteps. But nothing that compromised any investigation or undermined any mission. Again, he was being zealous in his efforts. And if these missteps were so significant, as the defendant claims, we would ask why, at the six-month review, the FBI considered him suitable for continued employment. So, once again, there are a number of issues here that preclude summary judgment. Again, with due respect to the magistrate judge, her analysis is simply omitting significant facts, including Mr. Herndon, the comparator, including that critical remark, not our typical agent, by Mr. Jones. And if there are no further questions, we would ask the court to reverse. Thank you very much. Thank you for your time. The case is taken under advisement, and the court will be in recess.